Nos. 14636 & 14726

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

IN RE THE MARRIAGE OF:

RONALD D. MILLER,

                    Petitioner and Appellant,

        vs.

JANET C. MILLER,

                    Respondent and Respondent.

---

Appeal from:  District Court of the Eighth Judicial District,
              Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

        For Appellant:

            Smith, Emmons, Baillie and Walsh, Great Falls, Montana
            Robert J. Emmons argued, Great Falls, Montana

        For Respondent:

            Marra, Wenz, Iwen and Johnson, Great Falls, Montana
            David Hopkins argued, Great Falls, Montana

---

                            Submitted:  November 5, 1979
                              Decided:  MAR 27 1980

Filed: MAR 27 1980

_Thomas J. Kearney_
                                    Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Husband, Ronald C. Miller, appeals the orders of the Cascade County District Court which granted the wife a 38.5 percent share in the husband's military pension and temporary maintenance during the pendency of this appeal.

The husband asserts that his military retirement pay is not a marital asset under Montana's Uniform Marriage and Divorce Act and in any event, that 10 U.S.C.A. §1401, et seq., which authorizes payment of his pension, preempts any state law which would permit distribution of a property interest in military retirement pay to the retiree's spouse.

The primary issue in this appeal concerns the husband's military retirement pay. A United States Code provision provides that an officer of the armed forces who completes 20 years of service is entitled to retirement pay based upon the number of years he serves in the armed forces, and his rank at retirement. See 10 U.S.C.A. §1401, et seq. See also Cose v. Cose (Alaska 1979), 592 P.2d 1230; In Re Marriage of Fithian (Cal. 1974), 111 Cal.Rptr. 369, 517 P.2d 449. Benefits are paid monthly and terminate upon the serviceman's death. As of October 1, 1978, the husband here received $1,279.02 monthly retirement pay. The amount of his retirement pay is adjusted for changes in the cost of living.

The husband commenced this action on November 22, 1977 by filing a petition for divorce. The trial court granted the parties a divorce on February 8, 1978 and the following November entered its judgment granting custody of the parties' minor child to the husband, and distributing their property. The court's order further provided that neither party was entitled to maintenance or attorney fees. The court amended its judgment on November 29, 1978 to allow the husband thirty days to purchase the wife's interest in their home. The husband filed his notice of appeal of the amended judgment on December

28, 1978. The husband also appealed the court's order of February 26, 1979 which granted the wife's motion for temporary maintenance pending the husband's appeal.

The husband and wife were married in 1959 and now are both in their middle to late forties. The husband served for 20 years in the United States Air Force and retired in 1974 with the rank of lieutenant colonel. Since his retirement, he has worked at Northwestern Bank in Great Falls, Montana, where he presently earns approximately $12,000 per year. The wife worked intermittently as a teacher during their marriage. Immediately prior to her divorce she was employed by the University Extension Service where she earned a gross of $361 a month. Presently she is a full time student at the University of Montana where she is completing courses toward a sociology degree. The parties at the time of the divorce decree had one minor child but custody and support are not at issue. The primary issues involve the disposition of the husband's military pension.

The pension is by far the greatest asset of the parties. According to evidence submitted by the wife, it has a present worth of $442,307. The trial court valued the parties net equity in the family home at $38,988 and the remainder of their real and personal property at approximately $20,000.

The court's order distributed half of the net equity of the home to each of the parties, divided the remainder of their real and personal property, and provided that the wife should have a 38.5 percent share in the husband's military pension. The decree provided that the wife's share in the pension should be paid monthly as it was received by the husband. Furthermore, it provided that in the event the wife predeceased her husband, that the pension should pass to her estate. At the time of this appeal, the wife's share in the husband's pension amounted to $492 per month.

-3-

The husband contends that his right to receive the pension is not a vested right and therefore the wife has no right to receive a share of his pension as part of a marital property division. Courts cannot reach agreement as to whether a military pension is income or, on the other hand, a vested property right. See Cose v. Cose, supra. Courts finding that a military pension is income have analogized retirement payments to salary because retirement payments are paid monthly and are earned in the sense that the retiree remains a member of the armed forces and is subject to recall to active duty. In Re Marriage of Ellis (Colo. C.A. 1975), 36 Colo.App. 234, 538 P.2d 1347, affd. 191 Colo. 317, 552 P.2d 506; Watson v. Watson (E.D. N.C. 1976), 424 F.Supp. 866. Viewed realistically, however, the better view is that the retiree has "earned" his pension by his years of active duty in the service. See In Re Marriage of Musser (Ill. C.A. 1979), 70 Ill.App.3d 706, 388 N.E.2d 1289; Kruger v. Kruger (N.J. 1977), 73 N.J. 469, 375 A.2d 659; In Re Marriage of Ellis (dissenting opinion), supra; In Re Marriage of Fithian (Cal. 1974), 517 P.2d 449, 111 Cal.Rptr. 369. After 20 years of active duty a person desiring to retire from the military is entitled to a pension. Under normal circumstances, a retiree does not have to perform any significant duties as a condition to receiving his monthly retirement check.

In the present case, at his retirement in 1974, the husband had the opportunity to enjoy a leisurely retirement or assume a second career. He chose to become a full time employee at Northwestern Bank of Great Falls. He therefore, has two sources of income, one from his retirement pay, and another from his salary as a bank employee. Unless an extraordinary chain of events should arise, the husband will not be recalled to active duty. The husband's military

retirement pay resembles an ordinary private pension, and just as a private pension, it should be treated as a vested property right which can be distributed as part of a court's property division.

The husband's second contention is that 10 U.S.C.A. §1401, et seq. preempts Montana's Uniform Marriage and Divorce Act insofar as it permits distribution of a property interest in his retirement pay. He relies on Hisquierdo v. Hisquierdo (1979), 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1. There, the United States Supreme Court held that treatment of a railroad pension receivable under the Railroad Retirement Act, 45 U.S.C. §231, et seq, as community property, violated the purpose of the Act and was prohibited by the supremacy clause. See also Knudson v. Knudson (1980), _____ Mont. _____, ___ P.2d ____, 37 St.Rep. 147. The husband argues that the relevant portions of 10 U.S.C.A. §1401, et seq. governing military pensions are analogous to the Railroad Retirement Act and therefore that the rationale of the Supreme Court's decision in Hisquierdo applies to the present case. The Railroad Retirement Act is however, explicit as to what happens to a railroad pension upon an absolute divorce.

The Hisquierdo decision was based on the broad language of §231m of the Railroad Retirement Act which protects the pensioner's benefits from "legal process under any circumstances whatsoever." The Court noted that Congress had carefully targeted its benefits towards the working spouse by providing that the nonworking spouse's "entitlement . . . to an annuity . . . shall end on the last day of the month preceding the month in which . . . the spouse and the individual are absolutely divorced." 45 U.S.C. §231d(d)(3). The Court stated that its decision might well have been different if Congress had not explicitly terminated a spouse's benefits upon absolute divorce. On the other hand, Chapter 71, 10 U.S.C.A. §1401, et seq., which

-5-

governs the husband's military pension does not contain any section similar to the provisions deemed controlling in the Hisquierdo decision. Chapter 71 does not protect a pensioner from attachment or other legal process, nor does it expressly provide that a wife's interest in her husband's pension shall terminate upon divorce. We cannot say that federal statutes directly or indirectly prevent the distribution made here. Czarnecki v. Czarnecki (Ariz. 1979), 600 P.2d 1098. Furthermore, we do not believe that the trial court's distribution to the wife goes contrary to the intent of Congress to promote continued service in the armed services by means of its military retirement plan. See In Re Marriage of Musser, supra; see also Gorman v. Gorman (Cal. C.A. 1979), 90 Cal.App.3d 454, 153 Cal.Rptr. 479. Congress must certainly have contemplated that the service people of this country would get married and therefore assume the duties and obligations of marriage.

Finally, the husband argues that it was error for the trial court to rule that heirs of the wife could inherit her interest in the military pension. We find no basis to distinguish the wife's interest from other marital assets which may be distributed by a trial court. See Kruger v. Kruger, supra. The court order provides the wife's share in the husband's retirement will be taken out of his monthly payments as he receives them. The husband's obligation lasts only so long as he continues to receive government retirement benefits. Thus the heirs of the wife can share in these benefits only while the husband is living. We affirm the trial court's order in this respect.

We note here that the trial court awarded the wife $500 per month as temporary maintenance pending the husband's appeal. The amount of temporary maintenance order by the court is almost equal to the wife's share in the pension which she

-6-

would have received had there been no appeal here. Since we affirmed the amended judgment, the wife will receive payment for her share of the pension which has accrued since the date of the amended judgment. In order to avoid a double payment to the wife, the trial court's award of temporary maintenance is vacated.

As modified, the amended judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices